ALFRED P REAUD
365 N Lincoln Avenue, Apartment 21
Loveland, CO 80537
Telephone:     +1 970 541-9950
Email: alreaud@gmail.com

Plaintiff, pro se

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALFRED REAUD

        Plaintiff,

    v.

FACEBOOK, INC.,

        Defendant.

Case No.   23-cv-06329-AMO

**PLAINTIFF'S REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

TABLE OF CONTENTS                                                          Page

I.    INTRODUCTION ………………………………………………………… 1

II.   FACTUAL BACKGROUND ……………………….…………………..…….. 2

III.  LEGAL STANDARD AND FULL DISCLOSURE ………...…..…………….. 3

IV.   ARGUMENT

      A.    Plaintiff States Two Claims Against Defendant Based on Facts and

            Evidence.

            1.    Plaintiff states a sexual harassment claim based on Colorado and

                  California Statutes. ……………………………………………… 4

            2.    Plaintiff claim for IIED should stand on nature, amount and duration of

                  distress inflicted. ……………………………………………… 6

      B.    Section 230 Of Communications Decency Act Inapplicable When Facebook Is

            Content Co-Creator. ……………………………….……..……………… 9

      C.    This Court Should Grant Leave to Amend Complaint. ……………….. 14

V.    CONCLUSION ……………………………………………….……………….. 16

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

3      Alfred P. Reaud ("Plaintiff") respectfully submits this Reply in Opposition to Defendant's

4   Motion to Dismiss Complaint with Prejudice ("Motion") and supporting Memorandum of Points

5   and Authorities ("Opposition")

6   **I.      INTRODUCTON**

7      Plaintiff Reaud bought this action against Facebook, Inc. ("Defendant") after receiving

8   repeated unwanted pornographic advertisements (ads) to his Facebook "feed"[1] starting in

9   December 2021 throughout the early part of 2023. This did not occur to Plaintiff on the Facebook

10   platform prior to 2021. Plaintiff regularly and consistently bought these captured ads to the

11   attention of Defendant via the channels provided by Defendant to report unsafe or unwanted

12   content. Plaintiff did so because the ads were gross, unsolicited, unexpected, and violated

13   Facebook Terms of Service ("TOS"). These ads severely bothered Plaintiff, in that Plaintiff

14   among other things found them intrusive, disgusting, and inappropriate. The ads enraged Plaintiff.

15   This cycle of ad and notification started in September 2022 and continued past the filing of this

16   action in January 2023.

17      Plaintiff contends that his lawsuit is valid, citing a common law cause of action for sexual

18   harassment under both Colorado and California law. The Plaintiff maintains that the Defendant

19   intentionally continued to serve pornographic ads despite repeated objections, causing severe

20   emotional distress. Furthermore, the Plaintiff argues that the Defendant could choose to serve

21   non-pornographic ads to those who have expressed a wish not to receive such content.

22      Finally, Plaintiff posits that Defendant may not claim the exclusion of 42 USC §230 to

23   overcome his action because Plaintiff can show Defendant modified alleged third-party content to

24   the point where they became content co-creators in the process of providing these alleged third-

25   party pornographic ads.

26   **II.      FACTUAL BACKGROUND**

27   ─────────────────────────

28   [1] The Facebook "feed" is the constantly updating, algorithmically driven personalized stream of content a user sees
    when they first log into the Facebook platform.

1    Plaintiff is a resident of Colorado since 1979. Plaintiff believes that he joined the

2    Facebook platform in 2009, closed his account in 2012 and then reopened his account in 2016

3    after the death of a friend, if his recollection is correct. Defendant started serving Plaintiff

4    repetitive sexualized ads in 2021, as captured in Plaintiff's conventionally submitted material[2].

5    These types of advertisements had not occurred previously.

6    Plaintiff repeatedly reported the most excessive ones, with the occasional pornographic ad

7    received and reported. To bring them to the attention of Defendant, Plaintiff must perform screen

8    captures of the ads. In September 2022, Defendant increased the volume of pornographic ads to

9    the point where Plaintiff was spending so much time reporting them that he started tracking the

10   pornographic ads, his reports to Defendant, along with other kinds of ads as reference. The

11   coarseness of the ads increased from caricatures of sex and penises to black and white imagery to

12   color imagery. By coarseness, Plaintiff means a juxtaposition of sex acts and/or grotesque penises

13   on one side of the served page with pictures of Plaintiff's friends and friend's minor children,

14   toddlers, babies on the other side.

15   From September 2022 to January 2023 Plaintiff was able to capture ninety-three (93)

16   images the subject of this complaint. During this time Plaintiff also captured sixty-three (63)

17   reports he made to Defendant about these pornographic advertisements. By December 2023,

18   Plaintiff was becoming emotionally and psychologically affected and he started noticing his anger

19   level increasing due to these pornographic advertisements, to the point it was affecting his

20   thought processes, wellbeing, and health. Plaintiff reported these pornographic advertisements to

21   local police in his jurisdiction who were unable or uninterested in helping. Plaintiff attempted to

22   get attorneys interested; however, Plaintiff is a semi-retired senior living on a fixed income with

23   no means of paying for an attorney who practices in federal court. Plaintiff even took the unusual

24   and enlightening step of copying and pasting the ads served by Defendant and posting them on

25

26   [2] Plaintiff's conventionally submitted material is a NTFS formatted USB drive, Docket Document [2], labeled

27   "Reaud v Facebook Inc Exhibit 1" containing 880 items. These include a Windows Excel spreadsheet and four
     folders containing the images used as evidence in Plaintiff's claim. The spreadsheet indexes every image in the
     USB drive for convenience. The md5deep checksum for the drive as a mounted block device is

28   "d41d8cd98f00b204e9800998ecf8427e".

PTF REPLY IN OPPOSITION TO DEF MOTION TO DISMISS
CASE NO. 23-CV-06329-AMO

1   his "feed" to convince Defendant that these ads were in violation of Facebook TOS. When

2   Plaintiff posted copies of the pornographic ads that Defendant was serving, Defendant promptly

3   banned him, proving Plaintiff's point. Plaintiff appealed his ban all the way to the Facebook

4   Oversight Board, several times. During the time of Plaintiff's banning, Defendant continued to

5   serve Plaintiff the same or similar pornographic advertisements for which it had banned Plaintiff

6   for copying and pasting. This repeated through numerous iterations in December 2022 and

7   January 2023 until Plaintiff filed this action in the District of Colorado, requesting a jury trial.

8   After Plaintiff's filing Defendant continued the serving of pornographic advertisements,

9   regardless, until Plaintiff filed his Motion for Preliminary Injunction, denied by the Court.

10  Defendant succeeded in a Transfer of Venue motion, transferring the action to the Northern

11  District of California on December 6, 2023. Plaintiff no longer uses any Facebook services as of

12  May 2023 due to what Plaintiff finds to be continuing misleading and fraudulent advertisements

13  in the same vein as the previous pornographic advertisements, but with purported marijuana ads

14  fraudulently advertising "Delivery in all 50 states!", as example.

15  **III.   LEGAL STANDARD AND FULL DISCLOSURE**

16          Plaintiff argues that his claim contains sufficient plausible factual matter to sustain a

17  challenge under Rule 12(b)(6), though not plead with the acumen of a lawyer. Plaintiff has stated

18  the when, where, and how of each instance he alleges in his claimed as sexual harassment, with

19  date, time, and content capture. He has stated his lack of consent to such content, that it violates

20  Facebook's own TOS, which he continued to reiterate to Defendant over the many instances

21  documented by Plaintiff in his complaint. Plaintiff captured these reports to Defendant in the

22  conventionally submitted material referenced in Exhibit 4 of his claim. Plaintiff has detailed

23  emotional distress and the injury it caused him in the only terms available to him, of what he was

24  aware of and experienced at the time.

25          Plaintiff inveighs against the statement that California law governs each of parties' claims,

26  though he will try to argue thereof in this Opposition. Plaintiff has had no contact with California

27  whatsoever with respect to his claim, Plaintiff lives in Colorado, all of the content Plaintiff alleges

28  against Facebook originates from a Facebook server physically located in Colorado,

PTF REPLY IN OPPOSITION TO DEF MOTION TO DISMISS
CASE NO. 23-CV-06329-AMO

1  approximately 20 miles from Denver[3], and the "operators" of such servers may reside in

2  Colorado, but Plaintiff is unable to verify without discovery. However, Plaintiff recognizes that

3  this Court's District may possess the only Courts appropriate to issues related to internet service

4  providers and the argument presented in section B of Plaintiff's Opposition, and accepts

5  jurisdiction thereof.

6        Plaintiff respectfully notifies this honorable Court pursuant to its Civil Standing Order H 4

7  (11/22/2023) that he uses GPT-4[4], Gemini[5], Google Scholar[6], and other similar tools at his

8  disposal while researching and generating this Opposition. Plaintiff brings this to this Court's

9  attention, additionally, because the Court previously admonished him[7] to declare any use of a

10  "lawyer" and he wishes to maintain transparency with this Court as to what may appear to be his

11  use of a "lawyer". Plaintiff certifies that he has personally verified the accuracy of any AI content

12  used in this Opposition.

13  **IV.  ARGUMENT**

14      **A.  Plaintiff States Two Claims Against Defendant Based on Facts and**

15          **Evidence.**

16          **1.  Plaintiff states a sexual harassment claim based on Colorado and**

17              **California Statutes.**

18        The underlying principle of sexual harassment is violation of the right to personal safety

19  and freedom from unwanted sexual advances or behaviors in any setting. "Sexual" is also an

20  adjective "1: of, relating to, or associated with sex or sexes; 2: having or involving sex"[8]. Plaintiff

21  used "sexual" in his claim as an adjective to define the kind of abhorrent harassment Plaintiff was

22  receiving. Plaintiff disagrees with Defendant's contention that "there is no common law cause of

23

24

25  [3] Complaint, Exhibit 5, page 4.

  [4] GPT-4 AI is located at https://chat.openai.com

26  [5] Gemini AI is located at https://gemini.google.com/app

27  [6] Google Scholar is located at https://scholar.google.com

  [7] Found in 5/4/2023 Minute Order, text only, Docket Document [24].

28  [8] Merriam-Webster iOS app, Version 5.7.1, "sexual", adjective, sense 1.

PTF REPLY IN OPPOSITION TO DEF MOTION TO DISMISS
CASE NO. 23-CV-06329-AMO

action for sexual harassment". He disagrees for the plain reason that where there is a statute applicable to harassment of this nature, then the injured party does have a common law remedy. Plaintiff argues that in Colorado, he could recover under Kiana Arellano's Law, discussed below. Further, he can claim damages for his injury under Cal.Civ.Code §1708.88, enacted September 2022, also discussed below. Plaintiff does not address the several contentions bought by Defendant related to sexual harassment in the employment setting. Plaintiff did not file a claim related to workplace sexual harassment. Plaintiff filed a claim of harassment that is sexual in nature.

First, under Colorado criminal law, we have Colorado Revised Statute (CRS) §18-9-111, Harassment - Kiana Arellano's Law. C.R.S. 18-9-111 1(e) states:

"1. A person commits harassment if, with intent to harass, annoy, or alarm another person, he or she:

…

(e) Directly or indirectly initiates communication with a person or directs language toward another person, anonymously or otherwise, by telephone, telephone network, data network, text message, instant message, computer, computer network, computer system, or other interactive electronic medium in a manner intended to harass or threaten bodily injury or property damage, or *makes any comment, request, suggestion, or proposal by telephone, computer, computer network, computer system, or other interactive electronic medium that is obscene*; or", emphasis added.

Whether there was intent to harass or annoy or whether the content sent to Plaintiff contained comments, requests, suggestions, or proposals that are obscene are for the trier of fact to determine after objective examination of Plaintiff's claim and evidence presented in his conventionally submitted material.

Secondly, though unaware of at the time of his filing, Plaintiff has since discovered the appropriate California statute to his claim. Plaintiff argues California Civil Code (Cal. Civ. Code) §1708.88 applies, which states:

1   "a) A private cause of action lies against a person 18 years of age or older who knowingly

2   sends an image, that the person knows or reasonably should know is unsolicited, by electronic

3   means, depicting obscene material."

4   Cal. Civ. Code §1708.88 continues to define the meaning of obscene material, consent,

5   damages, etc. Plaintiff believes that the evidence contained in his claim attachments and

6   conventionally submitted materials fit that definition, he never solicited the material, and he never

7   gave consent. However, Plaintiff brings to the Court's attention the exemptions of §1708.88(d)

8   related to internet service providers ("ISP"). Because the contentions of Facebook in their Motion

9   argument, *at* B, related to 42 USC §230(c), and both §230(c) and §1708.88(d) offering exclusions

10  of similar nature to ISPs, Plaintiff will address those protections in section B of his Opposition.

11  Hence, because the conduct Plaintiff alleges in his claim is illegal in Colorado, and

12  recoverable against in California, Plaintiff's claim for sexual harassment against Facebook should

13  stand, or in the alternative Plaintiff should have this Court's leave to amend his complaint.

14          **2.      Plaintiff's claim for IIED should stand on nature, amount and**

15          **duration of distress inflicted.**

16  Plaintiff argues that by the very standards Facebook is asking this court to use, there is

17  sufficient evidence for Plaintiff's claim of IIED to stand. As example, Facebook argues that the

18  definition of IIED as expressed in *Batuhan v. Assurity Fin. Servs., LLC*, 2016 WL 1055107

19  applies.

20  First, Facebook contends that their conduct is not "extreme and outrageous" because the

21  conduct must "exceed all bounds of that usually tolerated in civilized community." Let us view

22  the conduct alleged in the light of Plaintiff's experience with respect to his claim to see if the

23  conduct fits the criteria:

24  Every time Plaintiff logs on to the Facebook platform, he alleges that he has to view at

25  least one unwanted image of an enlarged penis, of fellatio, or of full sex per login session, and

26  regularly many such images. Plaintiff goes to check on friends, there is a new penis advertisement

27  or sex act up in the right-hand corner of the screen, sometimes two. Plaintiff moves the mouse;

28  there is a new advertisement with a penis or sex act. Plaintiff just sits there and eventually a new

1   pornographic advertisement pops up. This goes on for months. A friend posts pictures of her new

2   baby, and Facebook accompanies that with images of schlongs and sex in Plaintiff's "feed".

3   Plaintiff cannot block these because Defendant curates them in the "Sponsored" section of the

4   Facebook platform users "feed" page, which a user is not capable of blocking. Plaintiff captures

5   these as often as he can and reports them every time he can, via the channels provided by

6   Defendant. He does everything Defendant requires him to do to report such objectionable content,

7   and yet Defendant continues to serve the objectionable content. Plaintiff takes great exception to

8   those images for personal reasons that Plaintiff can only describe as sexual imagery addiction.

9   Even after Plaintiff filed this action, Defendant continued to serve Plaintiff pornographic

10  advertisements. In every instance where Plaintiff claims a pornographic advertisement, that

11  advertisement coarsely violates Facebook TOS, as evidenced by the screen captures noted in his

12  Complaint, Attachment 1 and Exhibit 2.

13        We would ask Defendant what civilized community tolerates this activity. Further,

14  Plaintiff must ask this honorable Court to envision when, in its experience, it receives regular

15  unsolicited pornography in its daily interactions with the Internet. One could comfortably say it

16  never does receive such, because the 1997 statement of Honorable Justice Stevens still rings true

17  in 2024:

18        "Though such material is widely available, users seldom encounter such content

19        accidentally. "A document's title or a description of the document will usually appear

20        before the document itself . . . and in many cases the user will receive detailed information

21        about a site's content before he or she need take the step to access the document. Almost

22        all sexually explicit images are preceded by warnings as to the content." [15][9] For that

23        reason, the "odds are slim" that a user would enter a sexually explicit site by

24        accident.[16][10]", *Reno v. ACLU*, 521 U.S. 844 (1997) *at* 854.

25  Plaintiff has found the words of Justice Stevens to be the case in his decades online,

26

27  ───────────────

28  [9] [15] Id., at 844-845 (finding 88).

    [10] [16] Ibid.

- 7 -                    PTF REPLY IN OPPOSITION TO DEF MOTION TO DISMISS

1   except in the context of his claim against Facebook. Within that context, Facebook made it

2   impossible for Plaintiff to get away from sexually explicit images while using the platform. What

3   qualifies conduct as outrageous? There is a simple definition given by the California Court of

4   Appeal, 2nd District, which indicates

5                   "Generally, conduct will be found to be actionable where the recitation of the facts

6                 to an average member of the community would arouse his resentment against the actor,

7                 and lead him to exclaim, 'Outrageous!'" *Berkley v. Dowds,* 152 Cal.App.4th 518, 533, 61

8                 Cal.Rptr.3d 304 (2007) *at* 317.

9         The Plaintiff argues that serving unsolicited, unexpected, unwanted, and fraudulent

10   pornographic advertisements, as the Defendant did to Plaintiff, would outrage average community

11   members of Plaintiff's community in Loveland, Colorado.

12         In contrast to the contention of Defendant, emotional distress damages should be available

13   to Plaintiff as he was both a witness and a direct victim of Facebook's outrageous ads, as

14   expressed in the required criteria for emotional distress damages in *McMahon v. Craig*, 176

15   Cal.App.4th 1502 (2009), 97 Cal.Rptr.3d 555 *at* 1510.

16         With respect to Defendant's second point, that Plaintiff has not sufficiently alleged that

17   Defendant has acted with intent, Plaintiff concedes that he maladroitly pleaded his claim of IIED.

18   Plaintiff presents evidence in his conventionally submitted materials that he reported and

19   complained about the pornographic advertisements at minimum the sixty-three times he mentions

20   in his claim. Defendant became aware of these issues; undeniably, evidenced by the fact that at

21   least seven times in December 2022/January 2023 Defendant restricted Plaintiff's use of the

22   platform for posting a screen captures of the very ads Defendant now says are "purportedly

23   pornographic", with Plaintiff appealing those restrictions to the Facebook Oversight Board.

24   Further, it is common knowledge that Defendant subsists on advertisements, and has thousands of

25   advertisements, if not millions considered worldwide.

26         Plaintiff argues that Defendant's continued serving of pornographic ads to Plaintiff, from

27   thousands of choices, demonstrates intentional willful behavior, especially since the Plaintiff

28   made Defendant fully aware of the issue. Plaintiff wants to convey intent in the sense "intent that

PTF REPLY IN OPPOSITION TO DEF MOTION TO DISMISS
CASE No. 23-cv-06329-AMO

is inferred to exist (as from willfulness or recklessness) in relation to an act"[11]. One may infer recklessness since Defendant sends sexual content to individuals who did not request it, does so without obtaining consent, and shows the sexual content unexpectedly.

With respect to Defendant's third point, Plaintiff respectfully states that Defendant argues from a position of ignorance of the mental state of Plaintiff at the time he filed this action. Plaintiff has had previous issues with anger and received counseling to help him control that anger. That counseling gave Plaintiff the tools channel anger into productive outlets. It also allowed Plaintiff to detect the anger triggers and act appropriately to remove them. That anger is visible in later communications that Plaintiff made to Defendant in reporting the pornographic advertisements. Plaintiff refers to them in Exhibit 4 of his complaint as "Unhinged Report". The source of Plaintiff's anger mirrors what a recovering alcoholic or addict would feel if a stranger attempted to force upon them a drink, needle, or pill, with the key difference being that, in Plaintiff's case, the 'drug' is pornographic material. In person, Plaintiff who has trained Krav Maga for five years in the last decade, stopping that inducement would not be an issue. However, on the Facebook platform, there was no stopping the conduct of Defendant. Plaintiff finally reached the point of action to stop the attacks and filed this lawsuit.

However, the character of the pleading notwithstanding, the facts of the case are as noted, and Plaintiff contends his claim should stand. In the alternative, the Court should allow Plaintiff to amend his complaint to meet the standards case law mandates.

**B.**   **Section 230(c)(1) of Communications Decency Act Inapplicable when Information Content Provider is Content Co-Creator.**

The protection of 42 USC §230(c)(1) only extends to Defendant if the content in question is content "provided by another information content provider." Information content providers ("ISP") such as Defendant are not protected under §230(c)(1) if they create the content themselves, nor are they protected if they modify third party content to the point where they become content co-creators.

---

[11] Merriam-Webster iOS app, Version 5.7.1, Legal Definition, sense 1b, "constructive intent".

PTF REPLY IN OPPOSITION TO DEF MOTION TO DISMISS
CASE NO. 23-CV-06329-AMO

1    The Appeals Court for the 9th Circuit defined where the boundary to content co-creation

2    lies in *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157

3    (9th Cir. 2008). In that case, the Court reversed a district court holding that the defendant was

4    immune under §230(c), where Appeals Court held:

5         "A website operator can be both a service provider and a content provider: If it

6         passively displays content that is created entirely by third parties, then it is only a service

7         provider with respect to that content. But as to content that it creates itself, or is

8         "responsible, in whole or in part" for creating or developing, the website is also a content

9         provider. Thus, a website may be immune from liability for some of the content it displays

10        to the public but be subject to liability for other content.[8][12]" *at* 1162,1163.

11    Defendant alleges in their Motion that the content that is the basis of Plaintiff's action is

12    content provided by a third party. Plaintiff finds that not to be the case. Though Plaintiff has had a

13    ridiculously challenging time contacting these alleged third parties, he was able to contact the

14    third party "Ace Golf Cart Covers"[13]. As example of what Plaintiff argues, Ace Golf Cart Covers,

15    when asked via email has no knowledge of the advertisement in question and replied, "This IS

16    NOT an ad for our website."[14], capitalization in original. Ace Golf Cart Covers does not vend any

17    sex product as depicted in the pornographic ads Plaintiff captured and wants no association with

18    pornographic advertisements.

19    The idea Plaintiff is trying to get across by content co-creation was further expressed by

20    the Court in *Anthony v. Yahoo! Inc.,* 421 F.Supp.2d 1257 (N.D.Cal.2006) with respect to § 230(c).

21    The difference is that rather than creating profiles, Plaintiff alleges Defendant created, co-created or

22    significantly modifies advertising content, for similar reasons that Yahoo! did, as expressed by the

23    Court in *Anthony*.

24

25    _____

26    [12] [8] See, e.g., Anthony v. Yahoo! Inc., 421 F.Supp.2d 1257, 1262-63 (N.D.Cal.2006) (Yahoo! is not immune under
          the CDA for allegedly creating fake profiles on its own dating website).

27    [13] Docket Document [25], Exhibit 3.

28    [14] Docket Document [25], Exhibit 3, page 4.

PTF REPLY IN OPPOSITION TO DEF MOTION TO DISMISS
                    CASE NO. 23-cv-06329-AMO

1    Examination of the evidence challenges Defendant's §230(c)(1) contention. If one clicks on a

2  given pornographic ad, what links via a browser is true "third party content". Such as Evoqueusa,

3  described below. However, the pornographic advertisement itself is not part of this "third party's

4  content", rather it is something placed there by some other party and is content which the true third

5  party does not sell, nor wants anything to do with, as with Ace Golf Cart Covers above.

6    As example, a short list of the same pornographic advertisement used on several different

7  unrelated vendor ads is

8  */2022/Screenshot from 2022-09-13 11-20-19.png* referencing Evoqueusa (evoqueusa.com)[15].

9  */2023/Screenshot from 2023-01-05 18-18-42.png* referencing Medley Home

10  (medleyhome.com)[16].

11    In the case of Evoqueusa, the vendor is a cosmetics firm hosted on Shopify. However, it's

12  Defendant ad gives "Increase the size of your penis you will be surprised by the result." The

13  imagery shows the efficaciousness with before and after images of penis enlargement. However,

14  Evoqueusa does not sell penis enlargement products, rather

15    "Evoque Usa is a 40-year-old family business which spans three generations. In

16    that time, it's grown from humble beginnings to becoming one of the top *professional*

17    *hair product manufacturers* in Turkey."[17], *emphasis* added.

18    In the case of Medley Home, which shows the same pornographic advertisement as

19  Evoqueusa, they do not sell penis enlargement products either. Their About page tells an

20  interesting story not related to penises either, rather

21    "Oh look, it's the guys behind Medley: two brothers, Travis and Ryan. We grew

22    up outside of Sacramento, CA, in a hippie household that taught us to tread lightly. … A

23    few years after college, we got into the *furniture business* together (and yeah, our first

24    showroom was in our living room). The more we learned about how *furniture* usually gets

25    made, the more sure we were that we wanted to make it the best way possible: with

26  ─────────────────────

27  [15] Docket Document [25] Exhibit 1.

    [16] Docket Document [25] Exhibit 2.

28  [17] https://evoqueusa.com/pages/our-story

PTF REPLY IN OPPOSITION TO DEF MOTION TO DISMISS
                                CASE NO. 23-CV-06329-AMO

cleaner, more eco-certified materials, local manufacturing, and an emphasis on quality and comfort."[18], *emphasis* added.

Neither vendor has a business related to penis enlargement. Defendant in their Motion would have this Court believe that the images in question are third party advertisements. They were, at one point, before modification or substitution. Subsequently, however, Plaintiff alleges that Defendant became content co-creator of those ads as noted in *Fair Housing Council of San Fernando Valley* above, by converting them to fraudulent pornographic advertisements. If the advertiser is not selling this product, penis enlargement, why is the advertising as depicted, and who would have the capability to modify the advertisement to show penises instead of the vendor's actual product, be it cosmetics or custom furniture?

Plaintiff can only conjecture the "why" at this stage in the case but would ask this Court to consider that few would have access to the advertising platform ad control features, Defendant and the vendor being candidates. Therefore, Plaintiff would have this Court consider why the above-mentioned two distinctly separate vendors selling distinctly different products would have the very same pornographic advertisement on penis enlargement. Plaintiff would also have this Court consider whom has the most to gain from these pornographic ads in a pecuniary or statistical fashion. Plaintiff submits neither vendor would gain anything in the above examples by advertising penises as opposed to the actual product they are selling, i.e., cosmetics or custom furniture. Nevertheless, we can infer that there is a party on the platform with interest in both pecuniary and statistical issues.

The above analysis operates with all the ads listed in Attachment 1 to Plaintiff's complaint. Due to page constraints and brevity, Plaintiff will mention just one further advertisement to establish the pattern. Attachment 1, page 2, fourth ad listed: *"/2022/ Screenshot from 2022-09-13 11-23-34.png"*, which has the message:

"ENLARGE YOUR PENIS Special offer today only. Order now!"

with corresponding images of penises before and after.

---

[18] https://medleyhome.com/pages/our-story

1    However, this ad takes one to https://*pacsun.com*, an online clothing store. PacSun's

2  Facebook advertisement is incongruent with their product, brand promise, and about

3  information[19]:

4         "Brand Promise

5         We innovate

6         We co-create the future of fashion

7         We strive to do the right thing

8         And inspire others to do the same

9         We are focused on youth

10        We are a work in progress

11        We win as a team." (as of 2/21/2024)

12    Plaintiff argues that PacSun did not place that pornographic cover on their advertisement,

13  nor are they advertising penis enlargement products anywhere on their main website. That is

14  something placed there by a party with access and control of the advertising content and stream. It

15  is undeniable that Defendant has control over all aspects of the advertising content and stream.

16  Further, Plaintiff selected this image specifically to show another example of the alleged conduct

17  perpetrated, as the top ad in the pair of ads in the image is another Evoqueusa ad, as discussed

18  above, with a different pornographic image.

19    In sum, Plaintiff respectfully requests this Court examine the ninety-three images

20  submitted in his conventionally submitted material, Docket Document [2], referenced in

21  Attachment 1 of Plaintiff's complaint considering Plaintiff's contentions in this section of his

22  Opposition. In addition, Plaintiff requests the Court note that §230(c)(1) contemplates an

23  identifiable "other information content provider" rather than the mere allegation by an ISP that

24  another information content provider provided the content subject of Plaintiff's claims.

25    Hence, if this Court finds Plaintiff's contentions plausible, it should bar Defendant from

26  using the exclusion of §230(c)(1) and/or further compel Defendant to disclose the identity of the

27  _____

28  [19] https://www.pacsun.com/company/about.html

PTF REPLY IN OPPOSITION TO DEF MOTION TO DISMISS
                                                        CASE NO. 23-cv-06329-AMO

1    alleged third party that is sending Plaintiff the unwanted pornographic advertisements, to allow

2    Plaintiff to recover from them.

3        Furthermore, should the Court restrict Defendant's reliance on §230(c)(1) exclusions, it

4    should similarly limit the use of Cal. Civ. Code §1708.88(d) exclusions. The exclusions of

5    §1708.88(d) apply only when "the entity is transmitting, routing, or providing connections for

6    electronic communications initiated by or at the direction of another person." The analysis of the

7    pornographic ads mentioned above does not suggest that the listed vendors initiated or directed

8    the placement of these ads that reached the Plaintiff. The Plaintiff argues that §1708.88(d) also

9    implies the involvement of an identifiable 'other person' beyond the ISP, not just an allegation by

10   the ISP that such a person is responsible for the content.

11       **C.    This Court Should Grant Leave to Amend Complaint.**

12       Plaintiff is not a lawyer and does not claim to be. He filed this action to stop this unwanted

13   conduct by Defendant. At the time of filing, Plaintiff felt as though he was under a sexual attack

14   and was powerless to make the perpetrator stop. This situation led to the onset of unhealthy,

15   angry, and injurious thoughts, as related above. Thus, to alleviate the symptoms and cause the

16   offending party to cease and desist, Plaintiff filed this action. Speaking respectfully and candidly,

17   filing this action was very cathartic for Plaintiff, it redirected the anger that was eating at Plaintiff,

18   and though Plaintiff left the Facebook platform for other reasons, this action succeeded in

19   stopping Defendant from serving pornographic ads to Plaintiff, even if for only the couple of

20   months before he left the Facebook platform.

21       Plaintiff filed a claim based on what he felt he could prove with the knowledge in hand

22   January 2023. Plaintiff familiarized himself with the Federal Rules of Civil Procedure and Local

23   Rules in the District of Colorado. The rules state:

24   "Rule 8. General Rules of Pleading

25           (a)    CLAIM FOR RELIEF. A pleading that states a claim for relief

26           must contain:

27                  (1)    a short and plain statement of the grounds for the court's

28                         jurisdiction, unless the court already has jurisdiction and the

- 14 -

1    claim needs no new jurisdictional support;

2         (2)    a short and plain statement of the claim showing that the

3                pleader is entitled to relief; and

4         (3)    a demand for the relief sought, which may include relief

5                in the alternative or different types of relief.".

6    Plaintiff argues that he has fulfilled those requirements filing the required Pro Se 2 (Rev

7    12/16) Complaint and Request for Injunction form[20] in the District of Colorado. Plaintiff admits

8    that he did not look at case law with respect to Rule 8 and took the text of the rule at its plain

9    English meaning.

10   Plaintiff did not intend, nor had he thought about amendment of his lawsuit. However,

11   since Defendant has mentioned this point, Plaintiff being in possession of significantly more

12   knowledge today than he had in January 2023, and in the interests of justice, he would request

13   leave of this honorable Court to amend the complaint.

14   Plaintiff would amend the allegations to correct deficiencies and to align with California

15   law recently discovered. He would remove the word "sexual" from the harassment part of the

16   claim as it distracts from the conduct Plaintiff claims Defendant wrongfully perpetrates. He

17   would possibly drop the IIED claim as it is startling hard to prove and would add negligence,

18   breach of contract, consumer fraud, and false advertising claims and particulars thereof, if this

19   Court so entertained.

20   The US Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962) *at* 182 stated:

21        "If the underlying facts or circumstances relied upon by a plaintiff may be a proper

22        subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In

23        the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory

24        motive on the part of the movant, repeated failure to cure deficiencies by amendments

25        previously allowed, undue prejudice to the opposing party by virtue of allowance of the

26

27   _____

28   [20] Docket Document [1].

- 15 -    PTF REPLY IN OPPOSITION TO DEF MOTION TO DISMISS
          CASE NO. 23-cv-06329-AMO

1    amendment, futility of amendment, etc.—the leave sought should, as the rules require, be

2    "freely given."

3         Plaintiff insists that he is not operating in bad faith and that he is not attempting to delay

4    or dilate proceedings in any fashion. Plaintiff will be sixty-six this year, and time is flying faster

5    than it used to for him. Plaintiff has not previously asked for amendment, is responding to a

6    contention of Defendant in their Motion, and has never had a chance to cure deficiencies in his

7    pleadings. The Plaintiff suggests that permitting an amendment to the complaint would not

8    unfairly disadvantage Defendant so early in the proceedings. Further, Plaintiff posits that

9    amending the claims as mentioned above does not significantly alter the scope of the dispute

10   because the dispute originates on the ninety-three pornographic advertisements captured by

11   Plaintiff subject of the sexual harassment claim. Rather, adding the aforementioned claims more

12   accurately represents the totality of the tort perpetrated by Defendant against Plaintiff, and

13   prevents Plaintiff from being prejudiced due to previous lack of knowledge.

14        Finally, Plaintiff contends that justice requires this Court grant leave to amend. Assuming

15   Plaintiff's allegations are true, beyond the personal injury to Plaintiff, the allegations suggest a

16   massive, ongoing scheme of fraudulent advertising by the Defendant against unsuspecting

17   Facebook platform users, including those in positions similar to the plaintiff. The intent of such a

18   scheme is to generate clicks and click generated revenue. This scheme would potentially affect

19   vendors as well because they would be paying for fraudulently obtained clicks that did not

20   generate business for such vendors. Allowing the Plaintiff to amend his complaint is vital. It will

21   shed light on the scheme revealed by the Defendant's continuous sending of pornographic

22   advertisements over six months, and essential for developing Plaintiff's case and achieving justice

23   in this action.

24   **V.    CONCLUSION**

25        For the forgoing reasons, Plaintiff respectfully requests that this Court deny Defendant's

26   Motion to Dismiss Plaintiff's Complaint with Prejudice or in the alternative Plaintiff respectfully

27   requests this Court grant Plaintiff leave to amend his complaint.

28

Respectfully submitted,

Dated: 2/23/2024

By: _____ /s/ _____
Alfred P. Reaud
Plaintiff, pro se

**CERTIFICATE OF SERVICE**

I hereby certify that on February 23, 2024, I caused the enclosed Plaintiff's Reply In Opposition To Defendant's Motion To Dismiss Plaintiff's Complaint With Prejudice And Memorandum Of Points And Authorities In Support Thereof to be filed pursuant to the Court's ECF Filing Procedures (Civil Cases), and served on opposing parties via ECF Notice of Electronic Filing pursuant to Northern Dist. of Cal. Civ. L.R. 5-1(h).

By: _____ /s/ _____
Alfred P. Reaud
Plaintiff, pro se