UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED PEDRO REAUD,<br><br>    Plaintiff,<br><br>    v.<br><br>FACEBOOK INC.,<br><br>    Defendant. | Case No. 23-cv-06329-AMO<br><br>**ORDER RE DISMISSAL**<br><br>Re: Dkt. No. 42 |

Before the Court is Defendant Facebook, Inc.'s ("Facebook")[1] motion to dismiss. The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for April 25, 2024, was vacated. *See* Civil L.R. 7-1(b). Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the Court hereby **GRANTS** Facebook's motion, for the following reasons.

**I.    BACKGROUND**

    **A.    Factual Background[2]**

Plaintiff Alfred Reaud of Colorado brings this action against Meta alleging claims for sexual harassment and intentional infliction of emotional distress based on "pornographic" advertisements he saw on his Facebook page. Compl. (ECF 1) at 3, 5. Reaud received

---

[1] Defendant Facebook, Inc., is now known as Meta, Inc. Mot. at 2 (ECF 42 at 4) n.1. Facebook changed its name to Meta on October 28, 2021. *Id.* For ease of reference and consistency with the factual allegations of the Complaint, the Court refers to Defendant as "Facebook" for purposes of this order.

[2] The Court accepts factual allegations in the complaint as true, *Health Freedom Def. Fund, Inc. v. Carvalho*, 104 F.4th 715, 722 (9th Cir. 2024), and "construe[s] the pleadings in the light most favorable to the nonmoving party," *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

pornographic advertisements on his Facebook feed starting in December 2021.  Compl. at 5.  He has seen 93 "unwanted gross and offensive pornographic ads" on Facebook, which violate Facebook's Community Standards.  *Id.*  Reaud repeatedly reported the pornographic ads to Facebook, but "Facebook has ignored [his] requests."  Compl., Attachment 2 (ECF 1-3) at 4.  Reaud also claims that Facebook "block[ed] him from interacting with friends or Facebook pages of interest" for violating the Community Standards when he posted the advertisements from his feed to his own page, which caused him "emotional and psychological distress."  *Id.*

The Community Standards that underlie Reaud's claims are incorporated into the Facebook Terms of Service, which govern Facebook's relationship with Facebook users.  Compl. at 5; Pricer Decl. (ECF 19-1), Ex. B, Terms of Service (providing that Facebook users may not violate the Community Standards and linking to them).  The Terms of Service include a governing law provision, which provides that all claims regarding the Terms or regarding a user's access to or use of Facebook shall be governed by California law.  *Id.* at 15.

**B.     Procedural History**

Reaud filed this action on January 24, 2023, in the District of Colorado, alleging claims for "sexual harassment" and intentional infliction of emotional distress ("IIED").  *See generally* Compl.  On April 11, 2023, Facebook moved to dismiss, or alternatively, to transfer venue to this district based on the enforceable forum selection clause in the Facebook Terms of Service.  ECF 19.  On October 31, 2023, Magistrate Judge S. Kato Crews recommended granting Facebook's Motion to Transfer to Venue to the Northern District of California pursuant to the forum selection clause in Facebook's Terms of Service.  ECF 27.  On December 6, 2023, Judge Nina Y. Wang adopted the Recommendation and transferred the action to the Northern District of California.  ECF 31.  On January 24, 2024, Facebook filed the instant Motion to Dismiss.  ECF 42.

**II.    DISCUSSION**

**A.     Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 8, which requires that a complaint include a

2

1   "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ.

2   P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a

3   cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.

4   *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

5   While the court is to accept as true all the factual allegations in the complaint, legally

6   conclusory statements, not supported by actual factual allegations, need not be accepted. *Ashcroft*

7   *v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The complaint must proffer sufficient facts to state a claim

8   for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59

9   (2007) (citations and quotations omitted).  "A claim has facial plausibility when the plaintiff

10  pleads factual content that allows the court to draw the reasonable inference that the defendant is

11  liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  "[W]here the well-

12  pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

13  complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679.

14  Review is generally limited to the contents of the complaint, although the court can also

15  consider a document on which the complaint relies if the document is central to the claims asserted

16  in the complaint, and no party questions the authenticity of the document. *See Sanders v. Brown*,

17  504 F.3d 903, 910 (9th Cir. 2007). The court may consider matters that are properly the subject of

18  judicial notice, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Lee v. City of Los Angeles*,

19  250 F.3d 668, 688-89 (9th Cir. 2001), and may also consider documents referenced extensively in

20  the complaint and documents that form the basis of the plaintiffs' claims. *See No. 84 Emp'r-*

21  *Teamster Jt. Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir.

22  2003).

23  **B.    Analysis**

24  Facebook argues that Reaud fails to allege an actionable claim for either sexual harassment

25  or IIED.  Further, Facebook argues that Section 230 of the Communications Decency Act bars

26  Reaud's claims, requiring dismissal.  The Court considers both groups of arguments in turn before

27  discussing whether leave to amend should be permitted.

28

### 1. Sufficiency of Pleading

The Court considers the sufficiency of Reaud's allegations regarding his two causes of action, (a) sexual harassment and (b) intentional infliction of emotional distress, in turn. *See* Compl. (ECF 1) at 5 and Attachment 2 (ECF 1-1).

#### a. Sexual Harassment

Plaintiff alleges a claim for sexual harassment, advancing that he finds the "pornographic ads" he saw on his Facebook feed "objectionable, outrageous, intrusive, and injurious to himself." Compl., Attachment 2, ECF 1-3 at 3.

Facebook argues that Reaud's cause of action for sexual harassment fails because there exists no common law cause of action for sexual harassment. Mot. at 6. The Court agrees. *See Myers v. Trendwest Resorts, Inc.*, 148 Cal. App. 4th 1403, 1426 (2007) ("there is no common law cause of action for sexual harassment."). The closest approximation to a claim for sexual harassment in California law is the state's Fair Employment and Housing Act, but that law is inapplicable to Reaud's claims because he does not interact with Facebook related to his employment or housing. *See generally* Compl; Cal. Gov't Code § 12900, et seq.

Reaud contends that his claim arises under Colorado criminal law. Opp. at 5 (citing Colorado Revised Statute §18-9-111). This argument fails because, as stated in the Terms of Use, any disputes Reaud may have against Facebook are governed by California law. Pricer Decl., Ex. B, Terms of Service (ECF 19-1 at 24).

Reaud alternatively suggests that his claim survives under a different statute, California Civil Code Section 1708.88(a), which states in part, "A private cause of action lies against a person 18 years of age or older who knowingly sends an image, that the person knows or reasonably should know is unsolicited, by electronic means, depicting obscene material." This argument fails for several reasons. First, Reaud may not amend his Complaint to introduce a new legal theory in his opposition to a motion to dismiss. *See In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1020 (N.D. Cal. 2020) ("It is well established that a complaint may not be amended by briefs in opposition to a motion to dismiss."). Second, California Civil Code Section 1708.88 does not apply to "[a]n internet service provider, mobile data provider, or operator of an online or mobile

4

1  application, to the extent that the entity is transmitting, routing, or providing connections for
2  electronic communications initiated by or at the direction of another person." *Id.* § 1708.88(d)(1).
3  Facebook, as an operator of an online application advertising third parties' goods and services,
4  plainly falls within this exemption. *See* Compl at 5 (explaining that Reaud's claims are based on
5  various advertisements he received via his Facebook feed).

6  Because both theories Reaud asserts fail to state a claim for sexual harassment, the Court
7  must dismiss this claim.

### b. Intentional Infliction of Emotional Distress

9  "A cause of action for intentional infliction of emotional distress exists when there is
10  '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless
11  disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or
12  extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the
13  defendant's outrageous conduct.' " *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (quoting *Potter
14  v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993)). "A defendant's conduct is
15  'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized
16  community.' " *Id.* at 1050-51 (quoting *Potter*, 6 Cal. 4th at 1001).

17  Reaud advances his IIED claim on two theories: (1) that he "received emotional and
18  psychological injury from being forced to view unwanted pornography if he wants to use the
19  Facebook platform," and (2) that Facebook "intentionally injure[d] [him]" by "blocking him from
20  interacting with friends or Facebook pages . . . due to posting screen shots of pornographic ads."
21  Compl., Attachment 2, ECF No. 1-3 at 4-5. Under both theories, Reaud does not sufficiently
22  allege that Facebook acted with the intent of causing emotional distress. An IIED claim "calls for
23  intentional, or at least reckless conduct – conduct intended to inflict injury or engaged in with the
24  realization that injury will result." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982).
25  Reaud describes, at best, passive conduct on the part of Facebook by posting third-party
26  advertisements, not conduct directed primarily at Reaud. *See Christensen v. Superior Court*, 54
27  Cal. 3d 868, 906 (1991) (holding that plaintiffs in that case failed to allege "that the conduct of
28  any of the defendants was directed primarily at them, was calculated to cause them severe

emotional distress, or was done with knowledge of their presence and of a substantial certainty that they would suffer severe emotional injury."). Reaud only asserts in conclusory terms that Facebook "intentionally injur[ed]" him by "continuing to serve such unwanted pornographic ads to [him] every time that [he] logs on to the Facebook platform." Compl., Attachment 2 (ECF 1-3) at 4. Reaud does not allege any facts establishing that Facebook acted with an intent to injure him or even with a realization that he would be injured, as is required to sustain an IIED claim. *See Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016), aff'd, 700 F. App'x 588 (9th Cir. 2017) (dismissing IIED claim where plaintiff failed to show Facebook acted intentionally in declining to remove content). Reaud's theory of IIED premised on Facebook's blocking his access to Facebook fails for the same reason. Indeed, Reaud concedes that he fails to allege sufficient facts establishing that Facebook intended to injure him as is required to sustain an IIED claim. *See* Opp. at 8. The Court finds that this admitted lack of allegations regarding Facebook's intent is sufficient to warrant dismissal of Reaud's IIED claim.

\* \* \*

Having found that the Complaint fails to state a claim for either sexual harassment or IIED, the Court turns next to whether Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230(c)(1), bars Reaud's claims as a matter of law because Section 230 immunity, if applicable, would preclude leave to amend the pleading.

### 2. Section 230 of the Communications Decency Act

Section 230(c)(1) provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." Section 230(e)(3) gives teeth to this intent by stating unequivocally that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). Importantly, Section 230 bars claims based on a service provider's decisions about "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009). Under Section 230(c)(1), a claim should be dismissed if: (1) the defendant is a "provider . . . of an interactive computer service"; (2) the content at issue was "provided by

1 another information content provider"; and (3) the plaintiff's claim treats the defendant as the "publisher or speaker" of that content.  47 U.S.C. § 230(c)(1).

Reaud does not dispute that Facebook is an interactive computer service provider (Opp. at 10), so the Court analyzes the remaining two elements as they apply to the facts alleged.

### a. Content Provided by Another Information Content Provider

Section 230 protection applies to content "provided by another information content provider," which is defined as someone who is "responsible, in whole or in part, for the creation or development of" the content.  47 U.S.C. § 230(c), (f)(3); *see also Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 744 (9th Cir. 2024).  The Ninth Circuit interprets the phrase "creation or development in whole or in part" in Section 230(f)(3) to mean that "a website helps to develop unlawful content . . . if it contributes materially to the alleged illegality of the conduct."  *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1167-68 (9th Cir. 2008).

Here, Reaud alleges that Facebook "served" the allegedly offending advertisements – he does not allege that Facebook created or developed them.  *See, e.g.*, Compl. at 5.  The examples of the offending advertisements he submits in Exhibit 2 to his Complaint plainly show that these are third-party advertisements, which Reaud alleges appeared "in the SPONSORED section of [his] Facebook page."  Compl. at 5; *see also* Ex. 2 (ECF 3).  The advertisements at issue, accordingly, were provided by another content provider, satisfying the second part of the Section 230 test.

Reaud reaches beyond the allegations in his Complaint to theorize that Facebook "co-created" the pornographic content – by altering various benign advertisements and incorporating a pornographic graphic and text – to "modify the advertisements" for its own financial gain.  Opp. at 12.  Neither these contentions nor any facts in support of them are included in the Complaint.  The Court may not consider new allegations alleged for the first time in an opposition to a motion to dismiss.  *See, e.g.*, *Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original).  In sum, Reaud does not present any facts supporting

his assertion that Facebook created or co-created the advertisements at issue, and his threadbare contentions in his opposition brief cannot alter the outcome. The advertisements constitute content provided by a third party.

### b. Facebook as "Publisher"

The final query under Section 230(c)(1) is whether Reaud's claim treats Facebook as a "publisher." A website acts as a publisher when it decides whether or not to post online material submitted for that purpose by a third party. *See Roommates*, 521 F.3d at 1170. "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Id.* at 1170-71.

Here, both of Reaud's claims seek to hold Facebook liable for "serving" him pornographic advertisements created by third parties. *See* Compl. at 5. These claims, based on allegations that Facebook allowed or posted third-party content online, seek to hold Facebook liable for its publishing decisions, including whether to post or withdraw advertisements on its website. The claims accordingly treat Facebook as the "publisher" of the offending content. *See Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1091 (9th Cir. 2021) (concluding that plaintiff's claims treated defendant as a publisher where the conduct at issue involved "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content.") (internal quotation marks and citation omitted).

Moreover, to the extent that Reaud's IIED claim is also based on Facebook "blocking" him from Facebook, such a claim similarly seeks to hold Facebook liable for its decisions as a "publisher." *See, e.g.*, *Sikhs for Just., Inc. v. Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017) (Section 230 applies because plaintiff sought "to hold Facebook liable as a publisher for hosting, and later blocking, [plaintiff's] online content."); *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1119 (N.D. Cal. 2020) (holding that Section 230 barred claims where they were based on "Facebook's decision not to publish [plaintiffs'] content" by terminating plaintiffs' accounts).

Therefore, because Reaud's claims each attempt to treat Facebook as the publisher or speaker of the content at issue, Section 230(c)(1)'s final requirement is met. Facebook is entitled to immunity against such claims under Section 230.

### 3. Leave to Amend

If dismissal is warranted, it is generally without prejudice, unless it is clear that the complaint cannot be saved by any amendment. *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005). Pursuant to Federal Rule of Civil Procedure 15(a), a court should grant leave to amend a complaint "when justice so requires," because "the purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). The Court may deny leave to amend, however, for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Courts generally deny leave to amend when Section 230 applies to bar claims, which cannot be circumvented by amendment to add more factual allegations in support of the defeated claims. *See Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265-66 (9th Cir. 2016). In this case, Reaud cannot allege additional plausible facts to escape Section 230. Therefore, the Court finds that amendment would prove futile and denies Reaud's request for leave to amend.

//
//
//
//
//
//
//

9

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Facebook's motion to dismiss **with prejudice**.

**IT IS SO ORDERED.**

Dated: September 9, 2024

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**